PEOPLE, PLAINTIFF AND APPELLANT, *v.* TORREGROSA ET AL., DEFENDANTS AND APPELLEES.

APPEAL from the District Court of Aguadilla in a Prosecution for Conspiracy.

No. 900.—Decided May 31, 1916.

EVIDENCE—FALSE WILL—PRESENTATION OF FALSE WILL TO EXECUTOR—INTENT.— The presentation of an alleged false will to an executor and obtaining money in consequence thereof is not equivalent to the intent of producing it or allowing it to be produced as genuine or true for some fraudulent or deceitful purpose at a trial, proceeding or inquiry, as described by section 128 of the Penal Code.

CONSPIRACY—FORGERY—FALSE WILL—INFORMATION—INTENT TO DEFRAUD.—An information charging two or more persons with forging a will with intent to defraud the lawful heirs of the supposed testator may be presented either for conspiracy to commit the offense as described by section 413 of the Penal Code or for the specific offense of forgery defined in the said section; but the allegation of the *fiscal* in the present prosecution that the acts of the alleged conspirators tended to defraud the heirs is not the same as an allegation that the acts were committed with intent to defraud said heirs.

ID.—FORGERY—FALSE WILL—PUBLIC HEALTH OR MORALS—PUBLIC JUSTICE.— The forging of a will is not an act of a public nature injurious to public health or morals or perversive or obstructive of justice or the due administration of the laws within the meaning of section 62 of the Penal Code.

FALSE WILL—DISBARMENT.—When a notary, who is also an attorney, is charged with preparing a false will, a proceeding for disbarment may be instituted, in the discretion of the Attorney General, without waiting for the result of the trial.

The facts are stated in the opinion.

*Mr. Salvador Mestre, fiscal,* for the appellant.

*Messrs. Llorens & Canales* for the appellees.

MR. JUSTICE WOLF delivered the opinion of the court.

The District Court of Aguadilla sustained a demurrer to the following information:

"The *fiscal* charges Angel Torregrosa, Simón Moret, Enrique C. Falcón, José V. Cintrón, Rosendo Pérez and Francisca Ramos with having committed the crime of conspiracy, a misdemeanor, in the following manner:

"*First charge.*—Prior to the date of the filing of this information, or about the 9th day of March, 1915, in Aguadilla which forms part of the judicial district of Aguadilla, the said Angel Torregrosa, Simón

Moret, Enrique C. Falcón, José V. Cintrón, Rosendo Pérez and Fran-
cisca Ramos unlawfully, wilfully and maliciously conspired, agreed
and united to commit the crime of falsification of evidence and unlaw-
fully, wilfully and maliciously acting together and with common
accord, then and there prepared and executed a false will, which is a
written instrument, making it appear therein that Artemio Vergne
Muñoz, now deceased, was the testator, Josefa Muñoz his sole and
universal heir and Agustín Guevara, the husband of the latter, his
executor, the will being false and reading as follows:

" '*No. 13—Open Will.*—In the city of Aguadilla at 3 p. m. of
this 9th day of March, 1915, before me, Angel M. Torregrosa, a
lawyer and notary of Porto Rico residing and practicing in Agua-
dilla, personally appeared, in his dwelling-house to which I had
proceeded as requested, Artemio Vergne Muñoz, fifty years of age,
unmarried, merchant, resident of this city and legitimate son of
Guillermo and Soledad. Being in the full enjoyment of his mental
faculties with power of speech and the necessary legal capacity to
make a will, in the opinion of the witnesses and of myself, as well as
of his physician, Dr. Simón Moret y Muñoz, who attended him and
assured me that notwithstanding the illness of which he is bedridden
the said Vergne had full use of his senses, the latter made his will
as follows: He appoints Agustín Guevara y Santini as his executor
and charges him with the arrangement for his funeral and burial.
He declares that he has no ascendants nor descendants, legitimate
or natural. He orders that the inventory of his property be made
by his executor in accordance with the books, papers and accounts
which may be found after his death. He states that he has an interest
as partner in the firm doing buisness in this city as López & Vergne,
that he has some debts and some credits which he wishes paid and
collected punctually, but that at the moment he cannot determine
the amount of either. After the expenses of his illness and death
and his debts are paid the residue of his property is left to his relative
Josefa Muñoz Rivera de Guevara as his sole and universal heir in
consideration of the kindness she had shown to him. He revokes and
annuls any other prior disposition of his property which he may
have made either orally or in writing. This is his will which he does
not sign an account of physical inability, but he authorizes the first
of the witnesses to sign it in his name. The witnesses present are
Enrique Falcón, Rosendo Pérez and José V. Cintrón who are known
to me personally as residents and of age. I, the notary, knowing the

testator and the witnesses, certify to the contents hereof and to the fact that the provisions of the Civil Code have been complied with as well as to the fact that amendment ''V'' was approved by the testator and the witnesses. (Signed) Enrique Falcón, for the testator and as witness. Rosendo Pérez. José V. Cintrón. Dr. Moret Muñoz. Angel M. Torregrosa.'

''The accused Angel M. Torregrosa and Simón Moret took part in the execution of the said will, the former as a notary and the latter as physician, certifying to and signing the same with reference to the mental condition of the said Artemio Vergne Muñoz, and each and all of the said accused persons knew by being present at its execution that at that time the said Artemio Vergne Muñoz was unconscious and without the use of his mental faculties to the extent that he could not speak, hear or understand. This fact was particularly well known to the accused Simón Moret Muñoz, José V. Cintrón and Francisca Ramos because all of them attended the said Vergne during his entire illness and up to the moment of his death as doctor, assistant and nurse respectively, and they knew positively that for about a week before his death the said Vergne had been unconscious and for that reason was physically unable to perform any act depending on his volition; and furthermore, the accused Simón Moret knew of and understood as a doctor all the particulars of the illness which deprived the said Vergne of his life and the mental condition of the patient on the date on which the *fiscal* alleges that the said false will was executed. Each and all of the said accused persons, Angel M. Torregrosa, Simón Moret, Enrique C. Falcón, José V. Cintrón, Rosendo Pérez and Francisca Ramos, knew that then and there the said Artemio Vergne Muñoz did not freely dispose of his property in that or any other manner inasmuch as he was not in the full possession of his mental faculties, and that being so, the will thus executed could not be his free, spontaneous and last will nor could he authorize any person to sign the said will in his name.

''The *fiscal* alleges also that at the said time and place the accused Angel M. Torregrosa, Simón Moret, Enrique C. Falcón, José V. Cintrón, Rosendo Pérez and Francisca Ramos unlawfully, wilfully, corruptly and maliciously united, agreed and conspired to prepare and execute the false will herein transcribed for the purpose of presenting the same, which they did, as genuine and authentic to the executor named therein, Agustín Guevara, the said accused Angel M. Torregrosa issuing a copy thereof as notary to the said Guevara for the

purposes of the proceeding for his taking charge of the property of the deceased, Artemio Vergne, which he did, and in the belief that the said will was genuine the said Guevara advanced to the accused Simón Moret the sum of $500 on account of his professional services for attending the said Vergne as physician and subject to the liquidation of the estate of the said Artemio Vergne, and paid to the accused Francisca Ramos the sum of $5 on account of her services as nurse, also subject to the liquidation of the said estate. The accused Angel M. Torregrosa also presented a bill to the administrator of the estate of the said Artemio Vergne for the sum of *two hundred* dollars for his fee for drawing up the said will. The acts thus performed by the accused tended to defraud the lawful heirs of the deceased Artemio Vergne of their property and the said false will was drawn up and executed for the fraudulent and unlawful purpose of presenting it also as genuine and authentic in the proceeding to be brought by the said lawful heirs.

"*Second charge.*—The *fiscal* also alleges that the said accused Angel M. Torregrosa, Simón Moret, Enrique C. Falcón, José V. Cintrón, Rosendo Pérez and Francisca Ramos on or about March 9, 1915, and in Aguadilla which forms a part of the judicial district of the same name, united, agreed and conspired and acting together unlawfully, wilfully and maliciously prepared and executed the said false will, which was a written instrument, making it appear therein that the now deceased Artemio Vergne Muñoz was the testator, that Josefina Muñoz was his sole and universal heir and that Agustín Guevara was his executor for the purpose of presenting or allowing to be presented the said false will as genuine and authentic, and the said act so performed tended to pervert and obstruct justice and the due administration of law.

"The said act is contrary to the law in such case made and provided and against the peace and dignity of The People of Porto Rico. (Signed) José E. Figueras, District *Fiscal.* (Sworn to before the district secretary.)"

An elaborate opinion was filed by the court, a part of which is a criticism of the failure of the Government to include certain facts which it seems to us were matters of evidence rather than necessary averments. We are inclined to think that the information is rather to be criticised for including too much than too little.

The general tendency of the information in this case is to charge a conspiracy to commit the crime set forth in section 128 of the Penal Code as follows:

"Section 128.—Evey person guilty of preparing any false or antedated book, paper, record, instrument in writing, or other matter or thing, with intent to produce it, or allow it to be produced for any fraudulent or deceitful purpose, as genuine or true, upon any trial, proceeding, or inquiry whatever, authorized by law, is guilty of felony."[b]

In pursuance of that theory the information charges, among other things, a presentation of the alleged forged will to the executor and the obtaining of money thereunder. The idea seems to have been, as expressed in the last few paragraphs of the first count, that the presentation of the will to the executor was equivalent to the intent of producing it or allowing it to be produced "for any fraudulent or deceitful purpose as genuine or true, upon any trial, proceeding or inquiry whatever," as described by the statute. We seriously doubt whether the production of the will, or a presentation of it to the executor, would be quite the proceeding that section 128 contemplates, and as the crime is described as arising from a presentation to such executor, we think the defendants are entitled to the benefit of the doubt. Perhaps it might be said that the mere preparation of a false and fraudulent will to be added to the protocol of a notary was already the intent to allow it to be produced at any trial, proceeding or inquiry. There must always be some inquiry at the death of a man whether or not he died intestate, and that inquiry may take place in the notarial office where copies are demanded. The notary's office is a public one and he must produce the will at the instance of the persons with apparent right thereto. Under some such theory a prosecution for conspiracy to do the act denounced in section 128 might be sustained, but the information was not drawn on that theory.

We think likewise that there is a simpler theory on which an information in this case could be framed.

Section 413 of the Penal Code in the English version. provides:

"Section 413.—Every person who, with intent to defraud another, falsely makes, alters, forges, or counterfeits any charter, letters-patent, deed, lease, indenture, writing obligatory, will, testament, codicil, annuity, bond, covenant, bank-bill or note, post-note, check, draft, bill of exchange, contract, promissory note, due bill for the payment of money or property, receipt for money or property, passage ticket, power of attorney, or any certificate of any share, right, or interest in the stock of any corporation or association, or any controller's warrant for the payment of money at the treasury, treasurer's order or warrant, or request for the payment of money, or the delivery of goods or chattels of any kind, or for the delivery of any instrument of writing, acquittance, release, or discharge for any debt, account, suit, action, demand, or other thing, real or personal, or any transfer or assurance of money, certificates of shares of stock, goods, chattels, or other property whatever or any letter of attorney, or other power to receive money, or to receive or transfer certificates of shares of stock or annuities, or to let, lease, dispose of, alien, or convey any goods, chattels, lands, or tenements, or other estate, real or personal, or any acceptance or indorsement of any bill of exchange, promissory note, draft, order or assignment of any bonds, writing obligatory, or promissory note for money or other property, or counterfeits or forges the seal or handwriting of another, or utters, publishes, passes, or attempts to pass, as true and genuine, any of the above-named false, altered, forged, or counterfeited matters, as above specified and described, knowing the same to be false, altered, forged, or counterfeited, with intent to prejudice, damage, or defraud, any person; or who, with intent to defraud, alters, corrupts, or falsifies any record of any will, codicil, conveyance, or other instrument, the record of which is by law evidence, or any record of any judgment of a court or the return of any officer to any process of any court, is. guilty of forgery."

The Spanish version of this is garbled but a correct translation would be:

"*Artículo 413.—Será culpable de falsificación toda persona que, con intención de defraudar a otra, falsamente hiciere, alterare, falsi-*

*ficare, o imitare, cualquier título, patente de privilegio, escritura, contrato de arrendamiento, instrumento, obligación escrita, testamento, codicilo, comprobante de pensión, bono, pacto, billete de banco, vale postal, cheque, libranza, letra de cambio, contrato, pagaré, cuenta vencida para el pago de dinero o bienes, recibo por dinero o bienes, billete de pasaje, poder, o cualquier certificado de acción, derecho o interés en el capital de cualquiera corporación o asociación, o libramiento de cualquier contador para el pago de dinero en la tesorería, orden o libramiento de un tesorero, o requerimiento para el pago de dinero, entrega de mercancías o bienes muebles de cualquier clase, o para la entrega de cualquiera escritura, finiquito, descargo o relevación por alguna deuda, cuenta, pleito, acción, requerimiento, o cualquiera otra cosa, inmueble o mueble, o cualquier traspaso o seguro de dinero, certificados de acciones, géneros, bienes muebles o de cualquiera otra clase, o cualquier poder o autorización para recibir dinero, o para recibir o transferir certificados de acciones o pensiones, o para alquilar, arrendar, disponer de, enajenar, o traspasar cualesquiera mercancías, bienes muebles, terrenos, o tenencias, o cualquiera otra propiedad inmueble o mueble, o cualquier aceptación o endoso de cualquiera letra de cambio, pagaré, libranza, poder o cesión de cualesquiera bonos, obligación escrita o pagaré por dinero u otra propiedad; o que imitare o falsificare el sello o letra de otra persona, o circulare, publicare, pasare o tratare de pasar, como genuina y verdadera, cualquiera de las cosas arriba especificadas como falsas, alteradas, falsificadas, o imitadas, tal como antes se determinan y describen, sabiendo que las mismas son falsas, alteradas, falsificadas o imitadas, con intención de perjudicar, causar daño, o defraudar a alguna persona; o que, con intención de defraudar, alterare, viciare c falsificare la inscripción de cualquier testamento, codicilo, traspaso, u otro instrumento cuya inscripción constituya prueba legal, o el registro de cualquier sentencia de un tribunal o el diligenciamiento de un mandamiento de una corte por cualquier funcionario."*

Therefore we think, under the facts set forth in the information, a new information may be filed wherein a conspiracy to make a false will is set forth with intent to defraud the legitimate heirs, perhaps naming them. The first count as drawn almost set out all the necessary facts for a conspiracy of this kind, but the averment at the end of the first count that the acts of the alleged conspirators tended to defraud the heirs is not the same as an averment that the acts were

committed "with intent to defraud such heirs" as required by section 413.

In such an information a great deal of the superfluous matter set out could be omitted.

We cannot see that the second count describes an act tending to pervert public justice except in the general sense in which any illegal act may be perversive of justice. Section 62 of the Penal Code, among other things, provides:

"If two or more persons conspire:

\*        \*        \*        \*        \*        \*        \*

"To commit any act injurious to the public health, the public morals, or for the perversion or obstruction of justice or due administration of the laws; they are punishable by imprisonment in jail not exceeding one year or by fine not exceeding one thousand dollars, or both."

The acts therein described are of a public nature and not the forging of a will.

We shall also draw the attention of the *fiscal* to the fact that if the acts described here can be proved they would be acts for which the notary who is a lawyer could be disbarred and a proceeding of this nature might, in the discretion of the Attorney General, be begun before this court without waiting for the outcome of the trial.

The order of the court below must be affirmed, but with an addition to the effect that the information be dismissed without prejudice to the filing of a new one, either for conspiracy to commit the crime described in section 413 or directly for the crime of forging described in that section.

*Affirmed.*

Chief Justice Hernández and Justices Aldrey and Hutchison concurred.

Mr. Justice del Toro took no part in the decision of this case.